R. C. T.

# Court of General Sessions, New York County.

February, 1904.

## MATTER OF CHARLES W. MORSE,

(42 Misc. 466.)

1. GRAND JURY—A SPECIFIC CRIME MUST BE SHOWN TO HAVE BEEN COMMITTED BY A PARTICULAR PERSON, KNOWN OR UNKNOWN, BEFORE THE GRAND JURY CAN SUMMON AND EXAMINE WITNESSES.

   To authorize the grand jury to exercise the power and duty it has to inquire into all crimes committed or triable in the county, it must be made to appear by complaint or information or knowledge acquired that there is reason to believe that a crime of a specific character has been committed by a particular person, whose name may or may not be known to the grand jury.

   In such case they may compel a witness to attend but can examine him only upon such matters as are relevant and material to the subject of the injury.

2. SAME—VOLUNTARY APPEARANCE OF ACCUSED.

   If the grand jury have reason to believe that the evidence of the accused will explain away the charge made against him they may permit him to appear, provided he appears voluntarily, and be heard, but he must be informed, by the foreman, before he is sworn of the nature of the charge and that, if he is sworn and testifies

in his own behalf, any statements or answers to questions which he may make may be used against him on his trial if he is indicted.

3. SAME—PRIVILEGE OF WITNESS.

While a witness summoned before the grand jury is guilty of a criminal contempt if he refuses to be sworn or answer a relevant question, he may refuse where he states under oath that his answer may tend to convict him of a crime, but it should appear from the examination whether the question was relevant or material to the subject of inquiry in order that the court can determine whether the witness had properly or improperly claimed privilege.

4. SAME—SUPPLEMENTAL INQUIRY BY GRAND JURY NOT ALLOWED.

After an indictment has been found and has been presented to the court the grand jury cannot institute a new and independent inquiry to supplement or strengthen the testimony upon which the indictment was found.

REQUEST by the grand jury to the court for advice and instruction.

No appearances.

GOFF, R.

The grand jury of the county of New York, returning to court, presents the following resolutions: "Resolved that the foreman be instructed to appear before the Honorable John W. Goff, Recorder, and request of him the instructions of the Court as to the rights and privileges of the Grand Jury and of Charles W. Morse, a witness summoned and sworn before them on the 19th day of February, 1904, and that for the information of the Recorder a transcript of the testimony given by said Charles W. Morse shall be submitted with said request."

In response to this request and in so far as may be pertin-

ent to it, I advise the grand jury of their powers and limita-
tions and of the obligations and privileges of a witness sum-
moned or appearing before them.

First.   The grand jury have power, and it is their duty, to
inquire into all crimes committed or triable in the county.
Except in special cases specified by law, their power to in-
quire is limited to crimes committed or triable in the county.
In order for them to exercise that power it must be made
to appear by complaint or information or knowledge acquir-
ed that there is reason to believe that a crime has been com-
mitted.   They have not the power to institute or prosecute
an inquiry on chance or speculation that some crime may
be discovered.   Such an inquisition, based upon mere sus-
picion, would be odious and oppressive, and would not be
tolerated by our laws.   There must be reason to believe
that a crime of a specific character has been committed by a
particular person whose name may be either known or
unknown to the grand jury.

Second. When they have reason to believe that a crime
has been committed, they have the power to summon and
compel the attendance of any witness and examine him
upon all matters that are relevant or material to the subject
of inquiry.   They have not the power to summon a witness
and examine him upon matters that are wholly unconnected
with or unrelated to the subject of inquiry.   The process
of the grand jury can be used only for the purpose of aiding
a lawful inquiry, and it must not be used for the purpose
of oppression or harassment.

Third.   In the investigation of a criminal charge, the grand
jury is not bound to hear evidence for the accused ; but if
they have reason to believe that evidence other than that
already  before them will  explain  away  the  charge they
should  order  such  evidence  produced.   For  that  purpose
they may hear the evidence of the person accused, but his
appearance before them must be voluntary and not under

the coercion of a subpœna. If he so appears, and before he is sworn, he must be informed by the foreman of the nature of the charge against him, and that, if he wishes to be sworn and make a statement or answer questions in relation to that charge, he is at liberty to do so; but if he does do so and an indictment should be found, any statement that he may make or any answers that he may give may be used as evidence against him upon his trial. The privilege of permitting an accused person to appear before the grand jury should be accorded very sparingly, and when accorded should be surrounded with the utmost care and caution. If that be not done an indictment found is liable to be set aside by the court.

. Fourth. A witness summoned is bound to appear and answer all questions that are relevant and material to the subject under investigation. If he refuses to be sworn, or to answer such questions, he is liable to be adjudged guilty, of a criminal contempt. The grand jury being an adjunct of the court is considered a part thereof, and a contempt committed in its presence is constructively committed in the presence of the court. There are, however, contingencies in which a witness may be justified in refusing to answer certain questions. In such case the refusal must rest upon the claim by the witness of privilege conferred upon him by the fundamental law that "no person shall be compelled in any criminal case to be a witness against himself." This privilege belongs exclusively to the witness himself. He may waive it at his election and answer all questions, or he may claim it, and if he does it affords him complete protection. The contingency that will justify the exercise of this privilege is where a question is asked the witness the answer to which may tend to convict him of a crime. If a witness bases his refusal to answer upon this ground he must so state, and he cannot be then questioned further as to why or how such result could inure. Chief

Justice Marshall, in the trial of Aaron Burr, said : "If the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of the answer, it must rest with himself who alone can tell what it should be, to answer the question or not. If in such a case he may say upon his oath that his answer would criminate himself the court can demand no testimony of that fact." This beneficent provision of law is designed to protect even a guilty man from being harassed, coerced or tortured by questions the answers to which might subject him to pains or penalties, prosecution or conviction for crime. But this claim of privilege of refusal to answer must be made by the witness in good faith and in the honest belief, under oath, that an answer would tend to incriminate him. It cannot be used as a device for the purpose of obstructing the due administration of the criminal law by shielding others, or for a sentimental or chivalrous reason based on love or friendship or from an apprehension of hatred or ill-will. It can be used only as a safeguard by and for the witness himself and for no other purpose. Therefore, care should be taken that the question asked be free from ambiguity and so plain as to call either for a direct answer or a refusal to answer on the ground that it might tend to convict him of a crime. And it should be made to appear from the whole examination and surrounding circumstances that the question was relevant or material to the subject of inquiry ; otherwise the court, in whose immediate presence and hearing the examination did not take place, would be unable to determine whether the witness had properly or improperly claimed his privilege,

Fifth. When a grand jury finds a bill of indictment and it is presented to the court, they have no further jurisdiction of its subject-matter so far as the person or persons therein accused of crime are concerned, except by way of a superseding indictment for the purpose of supplying

some omission or of remedying some defect in the previous indictment. They cannot institute a new and independent inquiry for the purpose of eliciting additional testimony to supplement or strengthen the testimony on which the indictment was found or to aid the prosecutor in the trial of the case.

By applying these rules to the examination which you have certified to me, it can be ascertained whether the grand jury was within its power in questioning the witness, and whether the witness properly or improperly claimed his privilege.

The examination is entitled as follows :

"Charles W. Morse, having been duly called and sworn as a witness before the Grand Jury in the case of The People of the State of New York against John Doe, testified as follows:"

The foreman then said, "I would like to make this statement to you on behalf of the Grand Jury. It is my duty to inform you, before you give any testimony here, that anything you may state to this Grand Jury may be used against you at some future time and that you are, therefore, not under any compulsion to answer any questions that may lead to incriminate you."

It is a matter of common knowledge that the name John Doe is fictitious and that it is used in judicial proceedings to represent or indicate a person whose true name is unknown. It may be inferred that a proceeding before the grand jury between the people and this unknown person was in its nature a criminal proceeding, but there is nothing to show that any complaint, information or charge had been made to the grand jury that a specified crime had been committed in this county by a known or an unknown person. This omission is very important in determining whether the questions asked and refused to be answered were relevant or material to the subject of inquiry, and consequently

whether the grand jury had the right to ask those questions. If the court, from the record of the proceedings before it, cannot say what the subject of inquiry was, it cannot determine whether the questions were relevant or material. And the caution given by the foreman to Morse rather obscures than clarifies the situation.    He is told, after having been duly called and sworn as a witness, "that anything you may state may be used against you at some future time."    Was Morse the John Doe?    If he was, the manner of his being called and sworn and examined would render nugatory an indictment found against him ; if he was not the John Doe, but was simply a witness, the caution administered was calculated to induce in him the belief that he was under suspicion.    He was there either as an accused person or as a witness.    If as an accused person, he had the absolute right to refuse to answer any and all questions.    If as a witness with the caution that whatever he might say might be used against him, he had a legal right to refuse to say anything that he believed could be used against him.    A witness should be free to give his testimony untrammeled by fear or by threats of consequences.

The interrogatories to the witness on the examination may be grouped under three heads :    Questions relating to transactions between him and the assistant district attorney who conducted the examination; questions regarding his marital relations; and questions as to his knowledge of certain individuals and as to the whereabouts of others.

Not knowing the subject of inquiry, it is impossible to say what relevancy or materality these questions had to any inquiry or to each other, and reading them as they are set forth, the court cannot say, as matter of law, that they refer to the commission of any crime.

Toward the close of the examination this question was put to the witness:    "Q. Now, Mr. Morse, the Grand Jury of this county have indicted Charles F. Dodge for the crime

of perjury committed upon a motion in the Supreme Court, by which he succeeded in vacating a judgment of divorce obtained by his wife in 1898, his wife having subsequently and in the utmost good faith married you. The Grand Jury seek further light and further evidence by which when Charles F. Dodge is returned into this State, under the warrant of the Governor, he may be duly convicted of that crime against the State and of that wrong to you and to the woman whom you have every right to suppose was your lawful wife. Do you decline to give the Grand Jury any information that is in your possession upon that subject-matter? A: I decline to answer any of your questions on the ground that it may tend to incriminate me."

It is manifest that the purpose of this question was to obtain or procure from the witness information which would aid in the trial and conviction of Dodge. That is a laudable purpose, in which every good citizen should unite, for the district attorney to zealously adopt every fair and legal method to discover and present evidence sufficient to convict a man of the heinous crime against the administration of justice which Dodge is charged with having committed. But the methods used must be fair and legal. They must not be coercive or inquisitorial, and a tribunal established or a procedure designed by law for one purpose cannot be perverted to another purpose, even though the latter be meritorious. It is better that Dodge, if guilty, should go unpunished than that the powers of the grand jury should be invoked for an unlawful purpose. If the witness Morse has knowledge of evidentiary matters connected with that charge of perjury, it rests with his own ethical or moral perceptions of what is right whether he will voluntarily disclose them to the district attorney, but he cannot be taken before the grand jury under the guise of a witness and compelled to furnish information which may aid the

district attorney in the prosecution of an indictment already found.

Except, as I have pointed out, this grand jury had no jurisdiction of any matter connected with that indictment, and it follows that they had no power to issue process and compel the attendance of the witness Morse for the purpose indicated by this question, and whether he properly or improperly claimed his privilege becomes of no consequence.

From the principles which I have stated and that are applicable to your inquiry of the court, and from the conclusions which I have drawn on reading the examination in the light of those principles, I advise you that you cannot lawfully continue the examination of the witness Morse under existing conditions, and he must be discharged from further attendance under the present subpœna.

Should the district attorney advise the grand jury to institute an inquiry into any crime committed or triable in this county as the law directs, and Charles W. Morse is required to appear before them as a witness, there is no legal obstacle to a subpœna being issued compelling his attendance.

Ordered accordingly.


## NOTE ON ADVISING THE GRAND JURY, &c.

It will be observed that the action of the Recorder in this Morse case (supra) took the form of direct advice to the grand jury.   It has been repeatedly held that the grand jury is a constitutent part of the court; and, on various occasions, courts have advised grand juries as to their powers, privileges, &c.   For convenience sake, the several cases reported in this series, in which such advice has been given, are here collected ; and a recent interesting case is added.

Thus, the Court has held that it had power to advise the Grand Jury not to consider a charge against a defendant

until after the termination of an examination then pending before a magistrate, the circumstances savoring of oppression. People v. Freund, 9 N. Y. Crim. 516, Goff, R. (May, 1895).

Subsequently, in one of the early stages of the well-known Molineux case (see 168 N. Y. 264; 16 N. Y. Crim. 120) a like application to advise the Grand Jury was made. The power claimed in the Freund case (supra) was reasserted, but the court refused so to advise the Grand Jury, upon the ground that the circumstances did not savor of oppression. People v. Molineux, 13 N. Y. Crim. 544; 26 Misc. 589. Goff, R. (March, 1899).

For an occasion upon which the court advised the Grand Jury that it had the right to conduct its deliberations without interference by the District Attorney, see In re District Attorney, 14 N. Y. Crim. 431, Goff, R. (March, 1900).*

The foregoing episode is connected with a subsequent presentment by this same Grand Jury. That Grand Jury made a presentment charging the District Attorney with official misconduct. The court held that, under the guise of a presentment, the Grand Jury had no power to hand up what was, in effect, an indictment based upon no legal evidence. Matter of Gardiner, 14 N. Y. Crim. 519; 31 Misc. 364, Foster, J. (April, 1900).

The Kings County Grand Jury was recently advised at length as to its general duties, and particularly as to its duty of original investigation. After stating the grand jury's general powers at great length, Crane, J., the County Judge, concluded as follows :—

Generally speaking, therefore, your investigations are limited, with the exceptions I will mention, to cases sent to you from the Magistrate's Courts; to those specified by the

---

*[NOTE: The title of the report in 14 N. Y. Crim. 431 is erroneous. The proceeding did not occur in the Supreme Court, but occurred on March 15, 1900, in the Court of General Sessions, County of New York, before Goff, R. See report in N. Y. Law Jour. March 24, 1900].

court, if any; to such as are submitted by the district attorney, and to the violations of law known to a grand juror.

Now to this general rule there are three exceptions, three matters in which you are charged with the duty of original investigation in which you have full power of initiative inquisition.   By statute you are directed to inquire into the case of every person imprisoned in the jail of the county on a criminal charge and not indicted; also you are told that you must inquire into the condition and management of the public prisons in the county, and the law gives you free access to them at all reasonable times.   The result of these inquiries may be submitted to the court and public in the form of a report, often termed a presentment, although the correct meaning of a presentment is an accusation by a grand jury upon which an indictment is prepared and drawn, an old practice no longer in use.   I know of no way in which you could make known the condition and management which you are instructed to investigate, except in some statement or report prepared and filed.   Of course, if conditions are satisfactory, there is no need of a report. During the past few months grand juries have found and reported certain conditions in Raymond Street Jail which, I am informed, are being promptly attended to by the municipal authorities.

Then, in the third place, you are directed to inquire into the willful and corrupt misconduct in office of public officers of every description in the county.   If this meant misconduct amounting to a crime, there was no need of adding this section, as such duty would be included in section 252, giving you power to inquire into all crimes committed in the county.   It has been said by a distinguished jurist that a grand jury should make no report or presentment against a public official, but that if there be evidence of the commission of a crime they should indict, otherwise be silent.   But it seems to me that this subdivision 3 of section 260 of the Code of Criminal Procedure, directing inquiry into official misconduct, means something more than an inquiry into crime and might justify a presentment in a proper case; but it is unnecessary to refer further to the matter now, for if

such a case should arise you can seek additional advice from me, if you desire it.

You will notice that the power of inquiry into matters, other than crime, is confined to the persons in jail, the condition of prisons, and official misconduct and does not authorize any inquiry or investigation into public matters generally, or the business or private affairs of individuals or corporations, except as pertaining to a specific charge of crime or the misconduct of a public official.

As to the formation of your body, the requisite number to indict, the nature of the evidence to be received, and by whom you may be attended and advised, these matters are distinctly set forth in the sections of the Code, copies of which will be handed to you.

General Duties and Powers of the Grand Jury.—N. Y. Law Journal, April 6, 1904.

R. C. T.